[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 7, 2004**
**THOMAS K. KAHN**
**CLERK**

No. 03-11060

D.C. Docket No. 02-00116-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERALD EUGENE BENNETT,
a.k.a. Woody,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(May 7, 2004)**

Before MARCUS and WILSON, Circuit Judges, and DUPLANTIER[*], District
Judge.

DUPLANTIER, District Judge:

_____
*Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana,
sitting by designation.

Gerald Eugene Bennett appeals from his convictions and sentence for drug trafficking, unlawful firearms possession, and attempting to kill an official in the performance of official duties with intent to interfere therewith. For the following reasons we affirm his convictions and sentence.

BACKGROUND

On May 10, 2002, Leon Hicks attempted to pass a counterfeit $100 bill at a retail store in Mobile County, Alabama. Suspecting that the bill was counterfeit, the station clerk contacted the United States Secret Service and the Mobile County Sheriff's Office. After speaking with the station clerk, Secret Service Agent Joe Paul identified the note as one involved in an ongoing counterfeiting investigation; he then proceeded to the gas station to investigate further. When Paul arrived at the store, deputies from the Mobile County Sheriff's Office were questioning Hicks. They had learned that Hicks had received the counterfeit bill from "Woody" at 8468 Dauphine Island Parkway, in payment for providing "Woody" with anhydrous ammonia, a necessary component in the manufacture of methamphetamine.

After confirming the location of the house where Hicks delivered the ammonia and received the counterfeit bill, Deputy Marvin Walker of the Mobile County Sheriff's Office executed an affidavit in support of a search warrant for the house and obtained a warrant authorizing a search for evidence of drug manufacturing and

2

counterfeiting. Agent Paul, along with several deputies from the Mobile County Sheriff's Office then went to the Dauphine Island Parkway location to execute the warrant.

After various deputies and Agent Paul were in position to execute the warrant, sheriff's deputy Eddie Blackwell rapped on the door of the house with his metal flashlight several times and announced the presence of deputies from the sheriff's office. Deputies Marvin Walker and Roy Cuthkelvin were equipped with a battering ram to open the door, if necessary. After announcing their presence, Deputy Walker noticed movement of a towel covering the glass portion of the door. Deputy Blackwell knocked again on the door and again announced the presence of sheriff's personnel. Deputy Walker noticed the towel flutter once again. At that point the deputies battered down the door and entered the house with Deputy Cuthkelvin leading the way. Immediately upon entering the house, Deputy Cuthkelvin was shot from behind a blanket hanging in an interior doorway of the house. While some officers moved Deputy Cuthkelvin to safety, others entered the house. Once the individuals behind the blanket indicated that they wanted to surrender, Deputy Walker pulled down the blanket, revealing Gerald Bennett, Chris Brannon and Elrod Miller. The law enforcement officers then searched the house, seizing guns and numerous items used in the manufacture and distribution of methamphetamine.

A grand jury indicted Bennett, Miller and Brannon on one count each of conspiracy to possess with intent to distribute and to manufacture 50 or more grams of methamphetamine (21 U.S.C. §846)(Count 1), attempted manufacture of more than 50 grams of methamphetamine (21 U.S.C. §846, 18 U.S.C. §2) (Count 2), possession with intent to distribute methamphetamine (21 U.S.C. §841(a)(1)) (Count 3), and attempting to kill an official in the performance of official duties with intent to interfere with such performance of official duties (18 U.S.C. §115) (Count 5). Additionally, the grand jury indicted Bennett for one count of possession of a firearm during drug trafficking crimes (18 U.S.C. §924(c)(1)) (Count 4), and later in a superseding indictment added one count each of being a convicted felon in possession of firearms (18 U.S.C. §922(g)(1)) (Count 6), being a drug addict in possession of firearms (18 U.S.C. §933(g)(3)) (Count 7), and possessing an unregistered, sawed-off shotgun (6 U.S.C. §5861(d)) (Count 8).

Brannon and Miller entered into plea agreements with the government. Bennett proceeded to trial, and a jury convicted him on all counts. The district judge sentenced Bennett to a 408-month term of imprisonment[1] and a sixty-month term of

---

[1] The district judge sentenced Bennett as follows: a 288 month term of imprisonment as to Counts 1 and 2, a 240 month term of imprisonment as to Counts 3 and 5, a 120 month term of imprisonment as to Counts 6, 7, and 8. The judge ordered each of those terms to run concurrently. Additionally, the district judge sentenced Bennett to a 120 month term of imprisonment on Count 4 to be served consecutive to the other sentences.

supervised release.  Bennett appeals both his convictions and his sentence.

EVIDENTIARY ISSUES

A.  Motion to Suppress

Bennett contends that the district court erred in denying his motion to suppress the evidence seized from his home because the law enforcement officials who executed the search warrant violated the "knock and announce" policy of 18 U.S.C. §3109.[2] Specifically, Bennett asserts that the officers failed to "announce" themselves and the purpose of their visit before they breached the door of his home.  In examining the denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*.  *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000).

It is undisputed that the police knocked on the door of the house prior to breaching the door.  However, the record reveals that the testimony of the law enforcement officers conflicted directly with the testimony of Bennett and the others as to whether the police announced who they were prior to entering the house.  When evaluating the factual version of events "we should defer to the [fact finder's]

---

[2] Title 18 United  States Code Section 3109 provides in pertinent part that:

> The officer may break open any outer or inner door
> or window of a house  . . . to execute a search
> warrant, if, after notice of his authority and purpose,
> he is refused admittance. . . .

5

determinations unless his understanding of the facts appears to be 'unbelievable.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *United States v. Rivera*, 775 F.2d 1559, 1561(11th Cir. 1985)), *cert. denied*, 537 U.S. 1114, 123 S.Ct. 850, 154 L.Ed.2d 789 (2003). The district judge credited the testimony of the law enforcement witnesses that they knocked and announced their presence and identity and that there was then movement in the house almost immediately. That finding, based on facts which were not "unbelievable," is not clearly erroneous.

The warrant authorized a search for evidence of drug crimes. As we have previously noted, "[g]uns and violence go hand-in-hand with illegal drug operations." *United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995). Considering the close relationship between guns and drug trafficking and the fact that, despite movement in the house, no one answered the door after the knock, the officers acted reasonably in breaching the door before it was opened. The district judge did not err in denying the motion to suppress.

B. Motion in Limine

The district judge denied Bennett's motion in limine seeking to exclude testimony by Timothy Brown concerning his drug trafficking activities with Bennett from December 2001 - January 27, 2002, concluding that the testimony was

admissible under Rule 404(b) of the Federal Rules of Civil Procedure.[3] Bennett asserts that the evidence was highly prejudicial and that, because it occurred approximately four months prior to the unlawful conduct charged in the indictment, it is too remote in time to be relevant. The indictment alleges that Bennett's illegal activity occurred "in or about early May, 2002, to and continuing through on or about May 10, 2002."

A district judge's decision to admit evidence under Rule 404(b) of the Federal Rules of Civil Procedure is reviewed for abuse of discretion. *United States v. Giordano*, 261 F.3d 1134, 1140 (11th Cir. 2001). A tripartite test applies in analyzing whether the district judge abused his discretion in admitting the challenged evidence:

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (*en banc*) (footnote and internal citations omitted). Rule 403 of the Federal Rules of Evidence provides:

---

[3] Rule 404(b) of the Federal Rules of Evidence provides in pertinent part that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident, . . . .

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Brown testified that at Bennett's request he provided Bennett with anhydrous ammonia to "cook" methamphetamine, that Bennett had a formula for creating the drug, that he was present when Bennett "cooked" an ounce of methamphetamine at Bennett's house, that Bennett probably "cooked" methamphetamine two to three times per week, and that he had seen Bennett use methamphetamine three to five times. Brown also testified that Bennett had "about ten grams" of methamphetamine for him which Brown never received because he was arrested prior to receiving it. Bennett's activities, as described by Brown, are the same type of conduct alleged in the indictment, i.e., manufacturing methamphetamine.

Brown's testimony is clearly probative of, and relevant to, establishing motive, opportunity, intent, and knowledge. Moreover, activity occurring at most only four months prior to the conduct charged in the indictment is not so remote from the charged activity as to be irrelevant. Nor does the four-month lapse undercut the probative value of the prior acts in establishing motive, opportunity, intent, and knowledge. *See United States v. Dickerson*, 248 F.3d 1036, 1047 (11th Cir. 2001),

8

*cert. denied*, 536 U.S. 957, 122 S.Ct. 2659, 153 L.Ed.2d 835 (2002). The district judge did not err in denying the motion in limine.

## MOTION TO SEVER

Bennett moved to sever trial on the count charging him as a convicted felon in possession of firearms from trial on the remaining counts of the indictment, urging that proof of his felony conviction would prejudice him before the jury with respect to the other counts. The district judge denied the motion.

The denial of a motion to sever is reviewed for abuse of discretion. *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). "We will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." *Id.*

Federal Rule of Criminal Procedure 14, as it read at the time of Bennett's motion, provided that [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses . . . the court may order an election or separate trials of counts, . . . ." Bennett has failed to carry the heavy burden of establishing that the denial of the motion resulted in "compelling prejudice against which the district court could offer no protection." *United States v. Walser*, 3 F.3d at 385. Several factors mitigated any prejudice resulting from the refusal to bifurcate the trial. Because the parties stipulated to the prior felony, the jury did not hear any details about the prior bad act,

thereby minimizing the possibility that the jury would improperly consider the evidence of the prior conviction when deliberating about the other felony charges. *See United States v. Miller*, 255 F.3d 1282, 1289 (11th Cir. 2001). Additionally, the district court reduced the potential for prejudice by instructing the jury:

> The parties in this case have stipulated that the defendant is a convicted felon. Therefore, it is not necessary for the Government to offer additional proof on this element. You are to consider that as a fact but only as to the charge in this count of the indictment. You are not to consider this fact in determining the guilt or innocence of the defendant in the other counts of the indictment. You are to disregard that fact in considering whether the defendant is guilty or not guilty of the other counts.

We presume that a jury follows the instructions given to it by the district court. *United States v. Shenburg*, 89 F.3d 1461, 1472 (11th Cir. 1996). There is no indication that the jury failed to follow the quoted instruction.

In a related attack on his convictions, Bennett contends that the district judge erred in refusing to allow his counsel to *voir dire* potential jurors as to whether they could set aside their knowledge that he was a convicted felon in considering the evidence on the counts in which that fact was not an element of the offense. Specifically, Bennett sought to ask:

> Can you, and each of you, when considering the evidence on Counts One, Two, Three, Four, Five, Seven, and Eight in this case, set aside your knowledge of the fact that the

10

> defendant is a convicted felon and consider only the other evidence presented tending to prove that he committed the acts charged in Counts One, Two, Three, Four, Five, Seven, and Eight, in determining his guilt or innocence on those counts? The reason I am asking this question is that the fact that the Defendant is a convicted felon has absolutely nothing to do with his guilt or innocence on Counts One, Two, Three, Four, Five, Seven, and Eight. You cannot consider in any way his status as a convicted felon when considering the evidence on those counts.

Bennett urges that the proposed question seeks information concerning possible bias and prejudice of the potential jurors and is not designed solely to assess whether a potential juror was willing to follow the law as instructed by the district judge.

As with the denial of a motion to sever, we review the refusal to ask a proposed *voir dire* question for abuse of discretion. See *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999). It is well established that "[t]he voir dire conducted by the trial court need only provide reasonable assurance that prejudice will be discovered if present." *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983) (internal quotation and citation omitted). Although the district judge did not inquire as to specific grounds for prejudice, the court did ask whether:

> any of you know anything – have any reason to believe based on your personal experiences, your personal philosophy, or religious belief or something about your past experiences good or bad which may have some bearing on your ability to serve as a juror in this case? I'd ask you to

11

> search your conscience and memory, and having done so, is there anyone who knows of any reason whatsoever that would cause you to question your ability to serve as a juror in this case?

Prior to commencing the *voir dire* process, the district judge advised the jury venire that Bennett was charged with, among other crimes, being a felon in possession of a firearm. Because the prospective jurors were already aware that Bennett had a prior felony conviction, the district judge's general inquiry as to whether any of them had any reason to question their ability to serve as jurors sufficed to provide "reasonable assurance" that prejudice against the defendant based on his prior felony conviction would be discovered if it was present. *Id.* Moreover, assuming *arguendo* that a juror harbored prejudice against Bennett based on his prior conviction, as noted previously, the district judge specifically instructed the jury to disregard Bennett's prior felony conviction in reaching a verdict on all counts of the indictment except the count charging him as a convicted felon in possession of a firearm. Considering that instruction, any error resulting from the district court's failure to ask the requested *voir dire* constitutes harmless error.

## INSUFFICIENT EVIDENCE

Bennett contends that his conviction for violating 18 U.S.C. §115 must be reversed because there is insufficient evidence to conclude that Deputy Cuthkelvin,

12

was a member of the class protected by the statute. Title 18 U.S.C. §115(a)(1) provides in pertinent part:

>     (a)(1) Whoever–
>
>         (A) assaults, kidnaps, or murders, or attempts or conspires
>         to kidnap or murder, . . . a member of the immediate
>         family of a United States official, a United States judge, a
>         Federal law enforcement officer, or an official whose killing
>         would be a crime under section 1114 of this title; . . . .
>
>         . . .
>
>         with intent to impede, intimidate, or interfere with such
>         official, judge, or law enforcement officer while engaged
>         in the performance of official duties, or with intent to
>         retaliate against such official, judge, or law enforcement
>         officer on account of the performance of official duties
>         shall be punished . . . .

Title 28 U.S.C. §1114 makes it a crime to kill or attempt to kill:

>         any officer or employee of the United States or of any
>         agency in any branch of the United States Government
>         (including any member of the uniformed services) while
>         such officer or employee is engaged in or on account of the
>         performance of official duties, or any person assisting such
>         an officer or employee in the performance of such duties or
>         on account of that assistance. . . .

Bennett interprets §115(a)(1) to apply to acts directed against only members of the family of the enumerated officials and not to acts against the officials themselves. Taking the opposite view, the government interprets §115(a)(1) to include both the

13

immediate families of the designated officials as well as the officials themselves. The proper interpretation of §115(a)(1) is a question of first impression in this circuit.

We review the district court's interpretation of the statute *de novo*. *United States v. Ettinger*, 344 F.3d 1149, 1153 (11th Cir. 2003). "In interpreting the meaning of a statute, it is axiomatic that a court must begin with the plain language of the statute." *United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000). Congress included only one "or" in the series defining the individuals protected by the act: "a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer <u>or</u> an official whose killing would be a crime under section 1114 of this title. . . ." (emphasis added). The use of a single "or" indicates that the enumerated official following the "or", i.e., "an official whose killing would be crime under section 1114 of this title," is simply the last group in the list identifying the class of people whose families are protected by the statute and not a distinct group of officials protected under the statute. Had Congress inserted a second "or" before "a Federal law enforcement officer"[4] then not only families of officials but also

---

[4] The statute would then read: "Whoever assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap, or murder a member of the immediate family of a United States official, a United States judge, or a Federal law enforcement, or an official whose killing would be a crime under section 1114 . . . shall be punished . . . ."

officials themselves would be covered, as contended by the government.[5]

The government relies, in part, on the statute's legislative history in urging that the statute applies to the officials themselves. When a statute's meaning is clear and unambiguous, no further inquiry is necessary and "[t]he plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002), *cert. denied* 537 U.S. 1112, 123 S.Ct. 903, 154 L.Ed.2d 786 (2003).

Because §115 protects only the families of the designated officials and not the officials themselves, it is clear that there was insufficient evidence to support Bennett's conviction for violating §115. There is no evidence that Bennett engaged in any prohibited behavior toward "a member of the immediate family" of any of the designated officials. However, that conclusion does not mandate reversal of Bennett's conviction for attempting to murder Deputy Cuthkelvin.

Rule 7(c)(3) of the Federal Rules of Criminal Procedure provides that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a

---

[5] The Ninth Circuit utilized the same approach in concluding that §115(a) protected only the family members of the enumerated federal officials. *United States v. Gray*, 809 F.2d 579, 582, *vacated,* 484 U.S. 807, 108 S. Ct. 54, 98 L.Ed.2d 18 (1987). Although the Supreme Court granted *certiorari* in *Gray* and vacated the judgment on other grounds, we nonetheless find the reasoning of the Ninth Circuit to be persuasive.

citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."  Although Rule 7(c)(3) is most frequently cited in connection with clerical or inadvertent errors in statutory citations, the rule is not restricted to such errors.  Citing *Williams v. United States*, 168 U.S. 382,  18 S.Ct. 92, 42 L.Ed. 509 (1897), the Advisory Committee Notes for subsection (c)(3), state that "[a] conviction may be sustained on the basis of a statute or regulation other than that cited."  In *Williams* the Supreme Court held:

> It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by somestatute [sic] in force.  . . . We must look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense was covered by a different statute.

*Id*. at 389, 18 S.Ct. at 94; *see also United States v. Massuet*, 851 F.2d 111, 115 (7th Cir. 1988) (conviction upheld where prosecutor intentionally cited inappropriate statute but a non-cited statute proscribed the acts charged in the indictment). Such is the situation involved here.  Apparently, the government misread the statute and mistakenly concluded that §115(a)(1) criminalized Bennett's attempt to kill Deputy  Cuthkelvin, and therefore cited that statute in the indictment.  Despite that mistake, the indictment unambiguously alleges facts which constitute a crime.  The indictment charges that

Bennett:

> with malice aforethought, did unlawfully, willfully, deliberately, maliciously and with premeditation attempt to kill an official whose killing would be a crime pursuant to Title 18, United States Code, Section 1114, to-wit (sic) by shooting Mobile County Sheriff's Deputy Roy Cuthkelvin, who was assisting a federal law enforcement officer . . . in the performance of official duties, with intent to impede, intimidate and interfere with such law enforcement officer while engaged in the performance of official duties, to-wit (sic), the execution of a search warrant. . . . .

Section 1114 criminalizes an attempt to kill any person "assisting an officer or employee of the United States" in the performance of official duties or on account of that assistance." The indictment charges each element required to prove a violation of §1114, and makes it clear, despite the statute cited, that the illegal act for which Bennett was being prosecuted is the attempt to kill Deputy Cuthkelvin while he was assisting Agent Paul during the execution of the search warrant. Nothing in the record indicates that Bennett was misled about what activity was alleged to be illegal; nor is there any indication that Bennett was prejudiced by the incorrect citation to §115. The jury instructions fully explained the elements of §1114 which the government was required to prove beyond a reasonable doubt.

Having concluded that the erroneous citation to §115(a) in the indictment does not *per se* require reversal of the attempted murder conviction, we now examine

17

whether there was sufficient evidence to convict Bennett of attempting to kill Deputy Cuthkelvin in violation of §1114.[6] We review a claim of insufficiency of the evidence *de novo*. *United States v. Delgado*, 321 F.3d 1338, 1344 (11th Cir. 2003). In analyzing a claim that the evidence was sufficient to support a conviction the "[e]vidence is viewed in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (internal quotation and citation omitted).

Secret Service Agent Joseph Paul testified that he was conducting a federal investigation into counterfeiting, that he was the only Secret Service agent in Mobile available to execute the warrant, and that agency policy prohibited the execution of warrant by an agent acting alone. In his official capacity Agent Paul participated in executing the search warrant which authorized a search for, among other things, "Items and Equipment used to Manufacture Counterfeit Currency." Bennett shot Deputy Cuthkelvin while he, Agent Paul and other law enforcement officers were attempting to execute the search warrant. The evidence is more than sufficient to conclude that the government proved beyond a reasonable doubt  that Deputy

---

[6] Bennett's brief specifically urges that there was insufficient evidence to prove that Deputy Cuthkelvin was assisting a federal officer in the performance of his official duties as required by 18 U.S.C. §115(a) and §1114.

18

Cuthkelvin was shot while assisting Agent Paul in the performance of his official duties.

CALCULATION OF DRUG QUANTITY

The jury found that more than 50 grams of methamphetamine was involved in each of Bennett's drug trafficking convictions. Additionally, for purposes of determining Bennett's base offense level, the district judge attributed 403.8 grams of methamphetamine to Bennett. Bennett challenges the drug quantity calculations on several grounds:

- Monica Price, the government's expert witness, was not qualified to testify about the analysis of methamphetamine and theoretical drug yield; and

- the district judge improperly considered the methamphetamine involved in Bennett's dealing with Timothy Brown to be relevant conduct for purposes of determining Bennett's total offense level.

A. Expert Witness

A district court's decision to admit expert testimony is reviewed for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997). Ms. Price earned a bachelor of science degree in microbiology; that course of study included a number of courses in chemistry. Additionally, after being hired by the Alabama Department of Forensics Ms. Price

received seven months of training, including training in how to calculate the theoretical yield of methamphetamine. Ms. Price is certified to investigate clandestine laboratories and has attended various seminars, including DEA and forensic seminars.

Bennett argues that Ms. Price's brief period of employment by the Department of Forensics, less than two years, and the fact that she had only several months experience actually "reporting cases" are insufficient to warrant a finding that she was an expert in the analysis of methamphetamine and theoretical drug yield. Experience is not the sole method of establishing an expert's qualifications. Rule 702 of the Federal Rules of Evidence[7] permits an individual to qualify as an "expert" based on knowledge, skill, experience, training <u>or</u> education. Thus, although Ms. Price's actual experience was limited, the district judge did not abuse his discretion in concluding that based on her education and training she was an expert entitled to state her opinion.

B. Relevant Conduct

In determining Bennett's base offense level for sentencing purposes, the district

---

[7] Rule 702 provides in pertinent part that :

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ."

judge held Bennett responsible for 403.8 grams of methamphetamine. Included in that amount was 340.2 grams involved in the extrinsic offense testified to by Timothy Brown and attributed to Bennett under the "relevant conduct" portion of U.S.S.G. §1B1.3. We review that finding of fact for clear error. *United States v. Jackson*, 276 F.3d 1231, 1233 (11th Cir. 2001). Bennett asserts that his extrinsic activities with Brown are not properly considered to be "relevant conduct" because the events were too remote in time from the offense of conviction and were not part of a common scheme or plan with the offense of conviction. "Relevant conduct" includes:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant
>
> . . .
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

"Relevant conduct" includes "all acts and omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Maxwell*, 34 F.3d 1006, 1010 (11th Cir. 1994) (quoting U.S.S.G. §1B1.3(a)(2)). The commentary to §1B1.3 indicates that "relevant conduct" is designed to take account of "a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." U.S.S.G. §1B1.3, comment.

21

(backg'd.).

In determining whether the drug quantities testified to by Brown are attributable to Bennett as "relevant conduct" we examine the "similarity, regularity, and proximity" between Bennett's counts of conviction and the extrinsic offenses testified to by Brown. *Maxwell*, 34 F.3d at 1011. We consider "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." *Id*. (internal quotation and citation omitted). All of the offenses in question are similar not only in that they involve methamphetamine but also because Bennett's role in each was the same, i.e., to locate a supplier for the anhydrous ammonia and to "cook" the methamphetamine. The consistency in both the drug and Bennett's role favors a conclusion that there are "distinctive similarities" between the offenses.

The proximity of the offenses further supports a conclusion that the offenses are part of the same course of conduct. Unlike *Maxwell*, where the drug sales at issue occurred more than a year apart, here only four to five months separated the offenses. The offenses of conviction and the extrinsic offense constitute a single course of conduct. Thus, the quantities of methamphetamine testified to by Bennett were

22

properly considered to be relevant conduct for the purpose of calculating Bennett's base offense level.

Bennett also urges that Brown's testimony is unreliable and therefore the quantities testified to by Brown should not be counted in determining the base offense level. The district judge credited Brown's testimony, as he was entitled to do. That factual finding is not clearly erroneous.

## ADDITIONAL SENTENCING ISSUES

### A. Enhancement for Obstruction of Justice

Bennett appeals the district judge's decision to enhance his offense level by two levels for obstruction of justice, pursuant to U.S.S.G. §3C1.1.[8] The obstruction of justice enhancement applies when a defendant commits, suborns, or attempts to suborn perjury. U.S.S.G. § 3C1.1, comment. (n. 4(b)). "Perjury" is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993).

---

[8] U.S.S.G. §3C1.1 (2003) provides in pertinent part that "[i]f (A) the defendant willfully obstructed or impeded . . . the administration of justice during the course of the . . . prosecution . . . of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; . . . increase the offense level by 2 levels."

We review for clear error the district court's factual finding that Bennett offered perjured testimony at the hearing on the motion to suppress. *United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999). Special deference is accorded to the credibility determination made by the district court. *United States v. Banks*, 347 F.3d 1266, 1269 (11th Cir. 2003).

The district judge rejected Bennett's testimony at the suppression hearing that he heard a knock on the door but did not hear the police announce their presence. Bennett concedes that his challenged testimony is material but contends that it was not false and that he had no willful intent to provide false testimony.

The district judge specifically found the cited testimony to be false: "I find it incredulous that those inside could hear the knock but could not hear the announcement of who these officers were." He further stated that he believed "that the defendant manipulated his testimony to avoid responsibility for any knowledge that law enforcement was entering the house." That finding establishes Bennett's "wilful intent to provide false testimony." The district judge did not clearly err in concluding that Bennett's testimony concerning his failure to hear the police announce their presence qualified as perjury for purposes of U.S.S.G. §3C1.1. Because that testimony in and of itself warrants the two level enhancement for obstruction of justice, it is unnecessary

24

to address Bennett's challenge to the district court's other findings of false testimony by Bennett.

B. Role in the Offense

Bennett asserts that the district judge erred in enhancing his total offense level by three levels because there were five or more participants in the offense conduct. Bennett concedes that in addition to himself, Elrod Miller, Christopher Brannon, and Loren Hicks participated in the offense, but he contends that neither Timothy Brown nor Shannon Montgomery participated in the offense conduct.

We review the district court's determination of defendant's role in the offense for clear error. *United States v. Garrison*, 133 F.3d 831, 843 (11th Cir. 1998). U.S.S.G. § 3B1.1(b) provides a three-level increase in the offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive. . . ." In assessing a defendant's role in the offense, the elements and acts in the counts of conviction are considered as well as all "relevant conduct" as defined in U.S.S.G. § 1B1.3. U.S.S.G. Ch. 3, Pt. B, intro. comment.; *see also United States v. Holland*, 22 F.3d 1040, 1045 (11th Cir. 1994). In determining the scope of a defendant's "relevant conduct" "the court must consider, in addition to the criminal act itself, the individuals' involvement

in the events surrounding the criminal act." *United States v. Holland*, 22 F.3d at 1046 (internal quotation and citation omitted).

For the same reasons detailed previously, Timothy Brown's activities in the uncharged offenses are part of the same course of conduct as the offense of conviction and therefore are properly considered to be "relevant conduct" in determining Bennett's role in the offense. That Brown was incarcerated throughout the period of the conspiracy alleged in the indictment does not preclude his conduct from qualifying as "relevant conduct." Because Brown's activities constitute "relevant conduct," for the purpose of determining Bennett's role in the offense, Brown is properly considered to be a participant in the offense of conviction. The district court did not err in concluding that Bennett managed or supervised criminal activity involving five or more participants.

C. Enhancement for Official Status

Bennett challenges the district judge's application of U.S.S.G. § 3A1.2 in calculating his offense level, contending that the evidence does not support the conclusion that he knew Deputy Cuthkelvin's official status prior to shooting him. As already noted, the district court's factual findings are reviewed for clear error. *United States v. Jackson*, 276 F.3d at 1233.

U.S.S.G. § 3A1.2 provides: "[i]f (1) the victim was (A) a government officer or employee . . . and (2) the offense of conviction was motivated by such status, increase by 3 levels." No extensive analysis of this claim is necessary. The district judge did not err in concluding that Bennett perjured himself in testifying that he did not hear the police announce their presence prior to entering his home to execute the search warrant. For that reason, the district judge did not err in concluding that Bennett knew of Cuthkelvin's official status prior to shooting him.

AFFIRMED.