[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-15610
Non-Argument Calendar
_____

D.C. Docket No. 03-00008-CR-3-RV

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 9, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM JEROME OVERTON,

Defendant-Appellant

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

(June 9, 2005)

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

William Jerome Overton appeals his conviction for theft from a licensed firearms dealer of a firearm in and affecting interstate commerce, in violation of 18 U.S.C. §§ 922(u), 924(i)(1). He argues that (1) the district court erred by denying his requested jury instruction that Count I of the indictment was "dismissed" and instead

charging the jury that "the indictment had a Count One, but that's a matter that's no longer for your consideration," and (2) the prosecutor's closing argument improperly inflamed the jury and, when coupled with the district court's failure to give a separate curative instruction, violated his right to a fair trial. Upon thorough review of the record, and careful consideration of the parties' briefs, we find no reversible error and affirm.[1]

---

[1] We deny Overton's motion to file a supplemental brief to argue, for the first time, that Blakely v. Washington, __ U.S. __, 125 S. Ct. 2531 (2004), applies to his case. It is well-established that we will not consider such arguments when they are not raised in the initial brief. See United States v. Duncan, 400 F.3d 1297, 1299 n.1 (11th Cir. 2005) (citing United States v. Levy, 379 F.3d 1241(11th Cir. 2004) (holding that defendant waived his Blakely claim as issue on appeal by failing to raise it in his initial brief); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Defendant abandoned the [Apprendi] indictment issue by not raising the issue in his initial brief."); United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) ("[O]ur well established rule is that issues and contentions not timely raised in the briefs are deemed abandoned."); United States v. Curtis, 380 F.3d 1308 (11th Cir. 2004) (declining to permit a supplemental brief raising a Blakely issue for the first time)).

We note that Overton not only failed to raise this issue in a timely manner on appeal, but also failed to raise the issue in the district court or at sentencing. Therefore, even if the issue had been adequately raised on appeal, we would review it only for plain error, which we correct only where (1) there is an error; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of a judicial proceeding. See United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996). Overton cannot satisfy the third prong, which requires him to show that the Blakely error affected his substantial rights, a standard that "almost always requires that the error must have affected the outcome of the proceedings below." See United States v. Curtis, 400 F.3d 1334, 1336 (11th Cir. 2005) (citing United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005)). "[I]n applying the third prong, we ask whether there is a reasonable probability of a different result if the Guidelines had been applied in an advisory instead of binding fashion by the sentencing judge." Rodriguez, 398 F.3d at 1301. Overton has not argued, and our own review of the record does not reveal, that the district court would have imposed a lesser sentence, even if it could have. On this record, Overton has not shown a reasonable probability of a different result, within the meaning of Rodriguez. Thus, even if he had properly raised this issue, we would not find reversible error.

The district court has "broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." United States v. Schlei, 122 F.3d 944, 969 (11th Cir. 1997). We review a district court's refusal to give a proposed jury instruction for abuse of discretion. See United States v. Puche, 350 F.3d 1137, 1150 (11th Cir. 2003). A defendant is entitled to appellate relief on this basis only where (1) the rejected instruction was substantively correct; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the requested instruction substantially impaired the defendant's ability to present an effective defense. See United States v. Zlatogur, 271 F.3d 1025, 1030 (11th Cir. 2001), cert. denied, 122 S. Ct. 1338 (2002).

To find prosecutorial misconduct, we apply a two-part test: "'(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" United States v. Gonzalez, 122 F.3d 1383, 1389 (11th Cir. 1997) (quoting United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991)). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995).

The relevant facts are these. On January 22, 2003, Overton was charged with possession of a firearm in and affecting interstate commerce by a convicted felon, in

3

violation of 18 U.S.C. § 922(g)(1) (Count I); theft from a licensed firearms dealer of a firearm in and affecting interstate commerce, in violation of 18 U.S.C. § 922(u) (Count II); and possession of a stolen firearm in and affecting commerce, in violation of 18 U.S.C. § 922(j) (Count III). Without objection from the government, the district court dismissed Count I of the indictment after agreeing that Overton was not a "convicted felon" for the purposes of § 922(g) and Overton proceeded to trial on the remaining two counts.

The government presented the following evidence, <u>inter alia</u>, against Overton. On November 21, 2002, at approximately 9:30 p.m., Deputy Sheriff Joseph Dixon of the Escambia County Police Department was on routine patrol when he heard an alarm sounding. After he had determined that the alarm was emanating from Jack's Super Pawn on the corner of "S" Street and Fairfield Drive, he parked his car along the west side of the building and subsequently observed Overton walk around the corner of the building. Overton was wearing blue jeans, a black T-shirt, black shoes, a black hat, a grayish jacket, and holding a pair of black leather gloves in his hand. Deputy Dixon approached Overton, who was standing directly outside the store where the alarm was sounding, and asked Overton if he worked at the store. Overton gave no response. Deputy Dixon then asked him if he saw anybody else in the area, and if he knew why the alarm was sounding. Overton responded that he did not know

4

anything and that he was "coming from Popeye's," which was in the same area of the pawn shop. Deputy Dixon noticed that Overton was sweating, breathing heavily, his clothes were "especially dirty," and that his hat had a pinkish-yellow fiber on it. Subsequent analysis determined that the fiber on his clothing, including his jeans, shirt, and hat, was insulation.

Soon after, other deputies and the manager of Jack's Super Pawn arrived at the scene. Once inside the store, the officers observed that the access panel from the attic into the store had been forced open. The officers found a crowbar (that did not belong to the pawn shop) just beneath the attic access area. The deputies also observed pink and yellow insulation fibers, similar to the substance found on Overton's clothing, on the floor of the store, just below the opened access area of the attic. Subsequent investigation revealed that there was a three- or four-foot hole in the roof of the building, and that the only way to access the attic from the hole in the roof was by crawling through insulation. A microanalyst from the Florida Department of Law Enforcement testified that the insulation found in the attic and on the floor of the store and that found on several items of Overton's clothing were the same type.

Located just below the attic opening was a three-gun rack with two firearms missing from it and one firearm laying on the floor beneath it. The owner of Jack's

5

Super Pawn was federally licensed to sell firearms. A rifle and a shotgun, both items from the pawn store's inventory, were discovered outside of the store. The firearms previously had been placed on the gun rack located just below the attic opening. Jack Khorram, the owner of Jack's Super Pawnshop, testified that he had seen Overton in the store approximately two weeks prior to the burglary and that Overton had been in the store for a "tremendous" period of time, walking from one end of the store to the other. Overton told Khorram that he was "just looking."

Overton testified in his own defense. According to his testimony, on the night of November 21, 2002, he was walking along Pace Street after having attended church when a van pulled up and the driver called out his full name. The van approached Overton with its side door open. Overton did not recognize the individuals in the van. As the van passed Overton, the individuals "patted [him] down from head to toe to [his] shoes" with insulation. They then ordered Overton to walk "up Pace, down Fairfield to approximately S Street," the intersection where Jack's Super Pawn was located. Overton testified that as soon as he crossed the street in front of Jack's Super Pawn, the alarm "went off," and the van then "pulled off." After Overton testified, the defense rested.

In its closing argument, the government argued the following:

6

[I]n order for the defendant's version to be true, these men, these mystery men, had to break in, pull insulation out and go find someone to frame for this job while someone else is committing the rest of the robbery. I suggest to you that that's ridiculous, that the only person who was there at this crime was the defendant, and that it's virtually an insult to your intelligence to believe otherwise.

The government also argued that Overton knew where to pry a hole in the roof of the pawn shop in order to steal the three firearms from the gun rack based on the observations he had made during his previous lengthy visit to the pawn shop. The government's theory of the evidence, as argued to the jury, was that Overton crawled through the attic to the attic access panel, reached down and removed two guns from the gun rack, and then attempted to steal the third gun. The prosecutor argued: "If he had just been satisfied with those two guns, he probably would have gotten away with it. And he may still get away with it. It's up to you."

Defense counsel then objected, arguing that the government's comments that "its virtually an insult to your intelligence" and "he may still get away with it" were improper. Defense counsel then requested that the district court "remind[] the jury that it's up to them to make a decision as to what the evidence shows." The district court sustained the defense's objection as to the comment that "he may still get away with it," but did not give the requested instruction. The district court overruled the objection as to the "insult to your intelligence" comment, stating "I don't think there

is anything that I can instruct them that would be helpful to the jury as a matter of fact or as a matter of law, so, request is denied." Defense counsel then moved for a mistrial, which also was denied. The government then continued with its closing argument, asserting that Overton reached for the third firearm with his crowbar, the gun rack fell to the floor taking the crow bar with it, Overton then jumped off the roof, walked around the building right into the area where Deputy Dixon was located.

The district court submitted a redacted indictment for the jury's review during its deliberations. The indictment redacted "Count One" and set forth "Count Two" and "Count Three." The defendant requested that the district court instruct the jury that Count One had been "dismissed." Over the defendant's objection the district court instead instructed the jury as follows:

> You will also have with you a copy of the indictment and the indictment shows the two charges, Count Two and Count Three. Now, I note that there is no Count One in this indictment. The original indictment had a Count One, but that's a matter that's no longer for your consideration. It's not a matter that's being tried before you, and the only two charges for your consideration at this trial.

The jury subsequently found Overton guilty as to both Counts II and III. After the verdict, district court dismissed Count III as duplicitous of Count II. On Count II, the district court sentenced Overton to a 66-month term of imprisonment, which was to

run consecutive to an existing Florida state sentence related to the robbery. This appeal followed.

Overton first argues that the district court abused its discretion by denying his request to instruct the jury that Count I of the indictment had been "dismissed" and instead stating that "the indictment had a Count One, but that's a matter that's no longer for your consideration." Overton urges that this instruction, coupled with the court's decision to use a redacted copy of the indictment with "Count Two" and "Count Three" as the listed offenses for the jury's review, gave the misleading impression to the jury that Count I was still at issue or that he had pled guilty to it prior to trial.

The district court has "broad discretion in formulating a jury charge as long as the charge as a whole is a correct statement of the law." United States v. Schlei, 122 F.3d 944, 969 (11th Cir. 1997). We assume "that a jury follows the instructions given to it by the district court." United States v. Bennett, 368 F.3d 1343, 1351 (11th Cir. 2004). We will not reverse a conviction based on a jury charge "'unless the issues of law were presented inaccurately, or the charge improperly guided the jury in a substantial way as to violate due process.'" United States v. Anderson, 326 F.3d 1330, 1330-31 (11th Cir. 2003) (quoting United States v. Moore, 253 F.3d 607, 609 (11th Cir. 2001)). Moreover, the district court is "not bound to use the exact words

9

and phrasing suggested by counsel in its charge." United States v. Russell, 717 F.2d 518, 521 (11th Cir. 1983).

Although Overton's requested instruction that Count I was "dismissed" was a correct legal statement, the district court nonetheless substantially covered the requested charge (and in so doing correctly stated the law) by instructing the jury to "not worry about" Count One. Moreover, the court accurately instructed the jury, "The only counts that are for your consideration are Counts Two and Three, the only two charges for your consideration in this trial." Because the jury is presumed to have followed the district court's instructions, we can find no abuse of the district court's broad discretion on this issue.[2]

We are likewise unpersuaded by Overton's contention that the prosecutor's comments during closing argument -- that "he may still get away with it. It's up to you" -- and the district court's refusal to give his requested curative instruction, violated his due process and fair trial rights. To demonstrate that substantial rights have been prejudiced, Overton must show that "there is a reasonable probability that,

---

[2] Overton's reliance on our decision in United States v. Artrip, 942 F.2d 1568 (11th Cir. 1991), is misplaced. In Artrip, the district court's instruction "failed to provide guidance" to the jury concerning its consideration of certain evidence. We found that this failure resulted in the modification of an essential element of the charged crime and created a "substantial likelihood" that Artrip was convicted of a crime other than the crime charged in the indictment. Id. at 1570-71. Here, we can find no such failure to provide guidance and Overton does not argue (nor can we find) a modification of essential elements.

but for the remarks, the outcome would have been different."  United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996).  "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."  United States v. Young, 470 U.S. 1, 11, 105 S. Ct. 1038, 1044 (1985); see also United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998) (in assessing the prejudicial impact of the comments, the Court evaluates them in the context of the trial as a whole and considers their probable impact on the jury).

Viewing the record as a whole and the comment in its context, the prosecutor's argument that Overton "may still get away with it.  It's up to you," did not prejudice Overton's substantial rights.  First, the district court sustained the defense objection to this comment.  Before opening argument, the court instructed the jury that it would have to rule on objections, and that regardless of how the court ruled, the jurors should not be influenced by the court's decision on an objection.[3]  Second, the court twice instructed the jury -- once before opening arguments and another time before

---

[3]  The court further explained: "if I sustain an objection, for example, that means that's an improper question that should not be asked.  Don't in any way infer from that that I have any feelings about one side or the other.  And don't speculate on what answer the witness might have given if I had allowed the witness to answer the question itself."

closing arguments -- that what the lawyers stated was not evidence, and that the jury was to base its verdict on only the evidence presented in the case. The jury is presumed to follow the district court's instructions. See Bennett, 368 F.3d at 1351. Simply put, Overton has not met his burden to show that there is "a reasonable probability . . . that, but for the remarks," the outcome of his trial would be different, and thus, he has not shown prejudice to his substantial rights. See Hall, 47 F.3d at 1098. Accordingly, we affirm.

**AFFIRMED.**