[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14056
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cr-00067-PAM-JRK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL E. HAMPTON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 13, 2012)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Daniel Hampton appeals his convictions for possessing with intent to

distribute cocaine, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(C); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  On appeal, he argues that the district court: (1) violated his Fifth and Sixth Amendment rights by excluding evidence relating to his defense theories, and (2) abused its discretion when it denied his motion to sever the felon-in-possession count.  For the reasons set forth below, we affirm Hampton's convictions.

I.

In March 2010, in the parking lot of a Quality Inn in St. Augustine, Florida, Hampton was found inside a car engulfed in smoke with the engine running. David Johnston and Neil Jones struggled to pull Hampton out of the car.  Hampton resisted their efforts.  Deputy Thomas Bickhart arrived and warned Hampton that he would use his Taser if Hampton did not exit the car and get on the ground. Hampton got out of the car and was restrained.  Cocaine, a digital scale, a handgun, and a rifle were found in the car.

In a superseding indictment, a federal grand jury charged Hampton with possessing with intent to distribute cocaine, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(C) (Count 1); possessing a firearm in furtherance of a drug trafficking

2

crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3).

Hampton filed a motion to sever Count 3, arguing that it was irrelevant to Counts 1 and 2. Under Federal Rule of Criminal Procedure 14(a), severance was proper to prevent apparent prejudice, and here, trying all three charges together would prejudice Hampton because the jury would learn of his ten-year old felony conviction. The government would not be prejudiced by a severance because Hampton had stipulated to the authenticity of his prior conviction, alleviating the government's need to prepare to try Count 3. The court denied the motion.

After a jury was selected, the court read the indictment to the jury and gave some preliminary jury instructions, including the instruction that the defendant was "on trial only for the crimes charged and not for anything else." The government then gave its opening statement, stating, among other things, that the parties had stipulated that Hampton was a convicted felon. Thus, the government would not need to offer any proof of that element of Count 3.

Hampton argued during his opening statement that the government would not be able to prove that he possessed the drugs or firearms at issue. One of the firearms had DNA on it that matched Paul Morgan, not Hampton. Hampton asserted that the government had not interviewed or contacted Morgan, and he

3

stated that a theme in the case was, "incomplete, partial investigation, minds made up from the start."  Finally, Hampton addressed Count 3 and agreed that he had stipulated to the existence of his prior conviction.  That conviction had occurred more than ten years ago, when Hampton was under the age of 18.

The morning of the second day of trial, Hampton argued to the court that the government had committed a discovery violation.  At the end of the first day of the trial, the government had, for the first time, informed Hampton that Morgan had been interviewed.  He argued that the government's failure to inform him of the interview prejudiced him because he had focused his defense on, and made statements to the jury regarding, the incomplete investigation.  The jury would not consider him credible if Morgan actually had been investigated.  Hampton asked that evidence regarding the investigation of Morgan be excluded or that the court consider granting a mistrial after a verdict was reached.  The court stated that it did not believe that the government had committed a discovery violation, but it would take the motion for a mistrial under advisement.

Timothy Reichenbach testified that he was a special agent with the Drug Enforcement Administration.  He and John Hollingsworth had interviewed Morgan because Morgan's blood was found on a gun magazine that was found in the burning car.  During the interview, Morgan had explained why his blood was

4

on the magazine.  Based on that explanation, which was corroborated by Polk County detectives, Reichenbach was satisfied that he did not need to investigate Morgan further in regard to this case.  Reichenbach obtained Morgan's photograph, but he did not show the picture to Johnston or Jones.

John Hollingsworth testified that he was a case agent on Hampton's case. Hampton asked Hollingsworth if he had informed Hampton the day before that Morgan had been interviewed.  The government objected on relevance grounds, and the court sustained the objection.  Hollingsworth testified that Morgan's DNA had been found on one of the guns in this case.  Hollingsworth had not taken Morgan's fingerprints or taken a photograph of Morgan.  Hampton asked Hollingsworth if he had interviewed or investigated Morgan, placed Morgan in a lineup, or shown Morgan's picture to Johnston and Jones.  The government objected to those questions, and the court sustained the objections.  Hampton asked Hollingsworth if he had learned that Morgan was a convicted drug dealer, and the government objected.  The court sustained the objection.  Out of the presence of the jury, Hampton asked the court whether he could ask questions about the interview of Morgan.  The court responded that Morgan was "not on trial" and that Hollingsworth's testimony on Morgan was not relevant.

Before closing arguments began, the parties clarified what language they

5

wanted included in the stipulation regarding Hampton's prior felony conviction. Hampton wanted to include the nature of the prior offense as well as its date, and he stated that the stipulation should mirror the indictment to avoid confusing the jury. The court stated that the only relevant information was that Hampton had been convicted of a crime punishable by more than one year of imprisonment, but the extra information could be included because the jury had been read the indictment. The court then denied Hampton's motion for a mistrial. The government read the stipulation to the jury. The stipulation specified that Hampton's prior felony conviction was for "fleeing or attempting to elude a police officer on or about March 8th, 2001."

The government began its closing argument by discussing the evidence as it related to Counts 1 and 2. As to Count 3, the government noted that the defendant's status as a felon was not in dispute. Additionally, there was evidence that he possessed two firearms. Convicted felons were not allowed to possess firearms. The government further argued that, despite Hampton's status as a convicted felon, he possessed the firearms to protect himself while selling drugs.

In his closing argument, Hampton argued that the government's investigation had been incomplete and that the officers involved had rushed to judgment without considering alternative explanations for the events in the case.

6

The evidence showed that Morgan's DNA was on one of the firearms. Despite that DNA, there was no evidence that the government ever showed Morgan's picture to Johnston or Jones or that they put Morgan in a lineup.

In rebuttal, the government argued, among other things, that a convicted felon could not legally possess the firearms found in the car. Additionally, based on the evidence, the jury could reasonably determine that Hampton was a drug dealer, a convicted felon, and had the firearms to protect the drugs in the car as well as himself.

The court instructed the jury to consider the evidence relating to each count charged in the indictment separately. Finding Hampton guilty or not guilty of one count was not to affect the jury's verdict for any other count. Additionally, the court stated that Hampton was "on trial only for the specific crimes charged in the indictment" and that the jury was only to determine whether Hampton was "guilty or not guilty of those specific crimes."

The jury found Hampton guilty of all three counts. Hampton filed a motion for a new trial, which the court denied. The court imposed a 92-month total sentence, and Hampton timely appealed.

## II.

"We review constitutional claims *de novo*." *United States v. Anton*, 546

7

F.3d 1355, 1357 (11th Cir. 2008). "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006) (quotations omitted). Without violating a defendant's constitutional right to present a defense, a district court may "exclude evidence that is repetitive [or] only marginally relevant." *Id.* at 326, 126 S.Ct. at 1732 (quotations omitted). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence." Fed.R.Evid. 401(a).

The district court did not err in limiting Hampton's questions regarding the government's investigation of Morgan. Hampton's defense focused on two theories: (1) that Morgan was the actual possessor of the contraband found in the car, and (2) that the government did not fully investigate the crimes at issue. Although questions regarding the government's investigation of Morgan would have been relevant to these defense theories, the district court was permitted to exclude repetitive evidence. *See Holmes*, 547 U.S. at 326, 126 S.Ct. at 1732. Reichenbach testified that he and Hollingsworth had interviewed Morgan and learned why Morgan's DNA was on one of the gun magazines found in the car. Because Polk County detectives corroborated Morgan's explanation, Reichenbach determined that he did not need to further investigate Morgan. Reichenbach

8

testified that he did not show Morgan's picture to witnesses to determine whether Morgan had been in the car or at the Quality Inn. Hollingsworth also testified that he had not taken Morgan's fingerprints or taken a photograph of Morgan. Thus, Hampton's proposed questions to Hollingsworth regarding his investigation of Morgan, whether he had placed Morgan in a lineup, and whether he had shown Morgan's pictures to Johnston or Jones were cumulative and properly excluded. *See Holmes*, 547 U.S. at 326, 126 S.Ct. at 1732.

Hampton's proposed questions regarding Morgan's criminal history were not relevant, as Morgan was neither a witness nor a defendant in Hampton's trial. Morgan's alleged past misdeeds would not have made it "more or less probable" that: (1) he was in the car with Hampton, or (2) the government did not thoroughly investigate this case. Fed.R.Evid. 401(a). This irrelevant evidence was properly excluded. *See Holmes*, 547 U.S. at 326, 126 S.Ct. at 1732.

Finally, Hampton argues on appeal that he lost all credibility with the jury when the district court did not allow him to adequately pursue his theme of an incomplete investigation through his questioning of Reichenbach and Hollingsworth. This argument is without merit. Based on Reichenbach's and Hollingsworth's testimony as to the steps they had not taken to investigate Morgan, Hampton was able to argue extensively to the jury that the government

9

had not completed a thorough investigation.

### III.

"The denial of a motion to sever is reviewed for abuse of discretion." *United States v. Bennett*, 368 F.3d 1343, 1351 (11th Cir. 2004), *vacated on other grounds*, 543 U.S. 1110, 125 S.Ct. 1044, 160 L.Ed.2d 1041 (2005). "We will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." *Id.* (quotation omitted).

A "court may order separate trials of counts" where the joinder of those counts "appears to prejudice a defendant or the government." Fed.R.Crim.P. 14(a). In *Bennett*, the defendant was charged with, among other things, possessing firearms as a convicted felon. 368 F.3d at 1348. We held that the defendant had not shown compelling prejudice from the district court's denial of his motion to sever the felon-in-possession count. *Id.* at 1351. Any prejudice resulting from the denial of the motion was mitigated by the parties' stipulation as to the existence of the prior felony conviction. *Id.* As the stipulation did not contain details about the prior conviction, the risk that the jury would have considered that conviction when considering the other charges was minimal. *Id.* The district court in *Bennett* further mitigated any prejudice by instructing the jury not to consider the

10

prior felony conviction "in determining the guilt or innocence of the defendant in the other counts of the indictment." *Id.* (quotation omitted). Similarly, in *United States v. Walser*, 3 F.3d 380 (11th Cir. 1993), there was no compelling prejudice because "the district court instructed the jury to consider each charge in the indictment separately and not to permit a verdict on one count to affect deliberations regarding another count." *Id.* at 387. "We presume that a jury follows the instructions given to it by the district court." *Bennett*, 368 F.3d at 1351.

The district court did not abuse its discretion when it denied Hampton's motion to sever. *See Bennett*, 368 F.3d at 1351. Like the defendant in *Bennett*, Hampton has not shown compelling prejudice from this denial because any prejudice was mitigated by the stipulation and jury instructions. *See id.* First, the stipulation included the information Hampton requested regarding the nature of the offense and the date on which it had occurred. In addition to informing the jury that the prior conviction had occurred approximately nine years before the events in this case, the stipulation meant that the conviction was brought up only intermittently during the trial. Further mitigating any possible prejudice was the district court's instruction that the jury should consider the evidence relating to each count charged in the indictment separately. The court further instructed that

11

the verdict on one count was not to affect the jury's verdict for any other count and that Hampton was on trial only for the charged offenses.  We presume that the jury followed those instructions and did not consider the prior felony conviction, which related only to Count 3, in coming to a verdict on Counts 1 or 2.  *See id.*

For the foregoing reasons, we affirm Hampton's convictions.

**AFFIRMED.**