UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas DORSEY and Ronald Franklin
Barr, Defendants-Appellants.

No. 86–8337.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1987.

Robert E. Falligant, Jr., Savannah, Ga., for Dorsey.

C. Fred Partin, Louisville, Ky., for Barr.

Bobby Lee Cook, Summerville, Ga., William T. Moore, Jr., Savannah, Ga., for Shewmaker.

Hinton R. Pierce, U.S. Atty., W. Leon Barfield, Asst. U.S. Atty., Savannah, Ga., for U.S.

Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

In this appeal, Thomas Dorsey and Ronald F. Barr challenge their drug related convictions in the United States District Court for the Southern District of Georgia. After a review of the record and the applicable law, we affirm.

The appellants were among twelve individuals named in an indictment handed down on December 9, 1985 alleging four counts arising from an illegal drug importation scheme. Count One alleged a conspiracy to import marijuana in violation of 21 U.S.C. Section 963. Count Two charged a conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Section 846. Counts Three and Four alleged the substantive offenses of importation and possession with intent to distribute marijuana in violation of 21 U.S.C. Sections 952(a), 960 and 841(a)(1), respectively, as well as aiding and abetting in violation of 18 U.S.C. Section 2. Three of the twelve named individuals, Dorsey, Barr and Robert Joseph Shewmaker,[1] pled not guilty to the charges and were tried jointly in the district court.

During the trial, the government introduced evidence, through the testimony of co-conspirators, of the defendants' participation in an enterprise, organized by James Reed, to import a boatload of marijuana from Colombia, South America for distribution in the United States. The testimony indicated that Reed began planning the venture in 1980, contacting numerous friends and former drug associates to acquire the necessary marine transportation, Colombian connections, off-load site, and land transportation for the contraband. Reed's plot materialized in November of 1980 when several of the conspirators sailed a shrimp boat, the "RAM," from Key West, Florida to Colombia and returned with a 20,000–pound cargo of marijuana. The RAM was off-loaded onto another vessel, the "Sally Ruth," sixty to seventy miles off the coast of Florida. The Sally Ruth then sailed to a designated site in St. Augustine, Florida where other members of the conspiracy transported the contraband to a "stash site" for eventual distribution.

The jury convicted Dorsey on both conspiracies charged in Counts One and Two but acquitted him of the substantive offenses alleged in Counts Three and Four. Barr was convicted on Count Four of aiding and abetting and possession with intent to distribute marijuana but acquitted on the other three counts.

I. Barr.

Barr raises as his sole issue the denial of his pretrial motion for severance filed pursuant to Fed.R.Crim.P. 14.[2] He asserts that the evidentiary spillover from the great flood of incriminating testimony against his co-defendants prejudiced his

---

**1.** Robert Joseph Shewmaker was tried along with Dorsey and Barr and was convicted on Count Two and Count Four of the indictment and joined in this appeal. Subsequent to oral argument, however, we dismissed Shewmaker's appeal because the appellant, in violation of his appeal bond, has eluded the proper authorities since January 5, 1987. By becoming a fugitive, Shewmaker forfeited his right to pursue an appeal. *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); *Joensen v. Wainwright,* 615 F.2d 1077 (5th Cir.1980).

**2.** Fed.R.Crim.P. 14 provides in relevant part:

Relief From Prejudicial Joinder

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

right to a fair trial. Moreover, he claims that the evidence admitted under Fed.R. Evid. 404(b) of extrinsic acts committed by Dorsey and Shewmaker denied him the rights secured by the Confrontation Clause in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

As a general proposition, the law favors joint trials of defendants charged with a common conspiracy since the nature and scope of the confederation is often prohibitively large and the evidence against the individual defendants cumulative. *United States v. Astling*, 733 F.2d 1446, 1454 (11th Cir.1984). Rule 14 requires that the district court balance the right of defendants to a fair trial, absent the prejudice inherent in a joint trial, against the public's interest in efficient and economic administration of justice. *United States v. Hewes*, 729 F.2d 1302, 1318 (11th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). We review a trial court's denial of severance only for abuse of discretion. *United States v. Watkins*, 811 F.2d 1408, 1410 (11th Cir.1987).

To demonstrate an abuse of discretion, the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection. *United States v. Harper*, 680 F.2d 731, 733 (11th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982). In measuring the prejudice suffered by a defendant as the result of a joint trial, the primary inquiry is whether, as a practical matter, the jury could "follow the admonitory instructions and accordingly collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." *United States v. Kabbaby*, 672 F.2d 857, 861 (11th Cir. 1982), *quoting, United States v. Zicree*, 605 F.2d 1381, 1389 (5th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

Barr maintains that his conviction is proof that he suffered compelling prejudice from the weight of the incriminating testimony against his co-defendants. He says that the sparsity of the government's evidence against him would have resulted in his full acquittal in a separate trial. The mere fact, however, that the defendant would have had a better chance of a favorable verdict if tried individually is not compelling prejudice. *Kabbaby*, 672 F.2d at 861. The government presented evidence sufficient to support Barr's conviction for possession with intent to distribute marijuana. The trial judge took every precaution to ensure Barr a fair trial and the jury demonstrated its ability to separate and review the independent evidence against Barr by convicting him on one count and acquitting him on three others. *United States v. Russo*, 796 F.2d 1443, 1450 (11th Cir.1986).

Compelling prejudice also resulted, according to Barr, from the admission of extrinsic act evidence against his co-defendants in violation of his constitutional right of confrontation. This contention is similarly without merit. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission of a non-testifying co-defendant's confession implicating another co-defendant violated the latter's right of cross-examination secured by the Confrontation Clause. Following *Bruton*, our precedent has explicitly acknowledged that compelling prejudice requiring severance may result from the admission of an out-of-court statement admissible only against one non-testifying co-defendant that implicates another co-defendant. *United States v. Astling*, 733 F.2d 1446, 1454 (11th Cir. 1984); *United States v. Avery*, 760 F.2d 1219 (11th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986) (severance required where co-defendant's grand jury testimony admitted for purposes of perjury charge implicated another co-defendant).

In Barr's case, however, the extrinsic evidence admitted against his co-defendants did not implicate him in any way. The trial judge's limiting instructions as well as the cross-examination of the witnesses concerning Barr's lack of involvement in his

co-defendants' past misadventures avoided any possibility of incrimination or jury confusion. Barr has alleged no *Bruton* violation and demonstrated no compelling prejudice resulting from the admission of the extrinsic act evidence against his co-defendants.

## II. Dorsey.

### A. Sufficiency of Evidence.

Dorsey first argues that there was insufficient evidence to support his conspiracy convictions. We review challenges to the sufficiency of the evidence under precepts set forth in *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

In making this determination, we view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility choices by the factfinder. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984).

Dorsey was convicted of conspiracy to import marijuana and conspiracy to possess with intent to distribute marijuana. In order to sustain these convictions, a reasonable jury must be able to find that the government proved beyond a reasonable doubt that Dorsey had "deliberate, knowing, specific intent to join the conspiracy." *United States v. Cole*, 755 F.2d 748, 755 (11th Cir.1985). While each defendant must have joined the conspiracy intentionally, each need not be privy to all the details of the conspiracy or be aware of all the other conspirators. *Id.* Dorsey claims that the testimony at trial of his participation in the conspiracy was so inadequate and inconsistent that any rational juror must have entertained a reasonable doubt as to his intent to join the confederation of drug smugglers.

We disagree. Two co-conspirators confirmed Dorsey's participation in the planning stages of the conspiracies. Government witness Randolph Milligan described the early phase of the plan when Jerry Reed, ringleader of the conspiracy, contacted him seeking an off-load site and land transportation for a boatload of marijuana. Reed indicated to Milligan that a Colombian source had been arranged but that other offers were welcome. Milligan in turn approached Robert Bergman with Reed's proposition. Soon thereafter, Bergman contacted Milligan about a friend with Colombian connections who was anxious to speak with Reed. Bergman's friend, Steve Knight, met with Reed at the Boar's Head, a restaurant in Savannah, Georgia. Milligan testified that Dorsey accompanied the Knight entourage and attended the meeting where plans for the illegal importation were openly discussed.

While Dorsey is correct in his assertion that his "mere presence" at the conference is inadequate to support his convictions on the conspiracy charges, *United States v. Adams*, 799 F.2d 665, 672 (11th Cir.1986), the testimony of unindicted co-conspirator Robert Bergman provided sufficient evidence of Dorsey's specific intent to join the conspiracies. Bergman testified that Milligan contacted him in 1980 regarding Reed's search for a source of Colombian marijuana. Shortly thereafter, Dorsey, with whom Bergman had been associated in prior drug transactions, called Bergman seeking marine transportation for Knight, who had a large stash of marijuana in Colombia. Seeing an opportunity for profit, the two decided to introduce their respective acquaintances. After Bergman and Milligan set up a rendezvous, Dorsey accompanied Knight to the Boar's Head in Savannah to iron out the details with Reed. Knight agreed to pay Bergman and Dorsey $25,000.00 each as a connection fee. Later, when the conspiracy's plans went awry, Dorsey and Bergman made several trips to

Knight's home in a futile attempt to collect the promised payment.

■ Although another government witness, Gary Bethurem, gave a conflicting account of the origins of the Colombian connection which did not implicate Dorsey, the testimony of Bergman, as collaborated by Milligan, provided sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Dorsey had deliberate, knowing, and specific intent to join the conspiracies to import and possess with intent to distribute marijuana and that he played a significant role in facilitating the transaction.

### B. Extrinsic Acts Evidence.

■ Dorsey next contends that the admission into evidence of testimony concerning his involvement in illegal drug transactions not charged in the indictment constituted reversible error. Federal Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the former Fifth Circuit articulated a two-prong analysis for determining the admissibility of extrinsic act evidence. First, the district court must determine that the evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by undue prejudice. *Id.*, at 911; *United*

*States v. Roe*, 670 F.2d 956, 967 (11th Cir.), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982). The trial court is afforded broad discretion in deciding the admissibility of extrinsic act evidence, and as stated earlier, its decision will not be reversed absent an abuse of discretion. *United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).

■■ During opening arguments, Dorsey's counsel stated that his client was merely an "unwitting" observer at the Boar's Head conference and that he had no intent to become involved in any criminal activity. Therefore, intent became the central issue in the government's prosecution of Dorsey. The government offered extrinsic act evidence of Dorsey's prior and subsequent involvement in drug smuggling and distribution solely for the purpose of establishing intent, and the jury was so instructed. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. *Beechum*, 582 F.2d at 911. The extrinsic evidence of Dorsey's involvement in several prior drug importation schemes with Bergman,[3] and evidence of his subsequent unrelated conviction for selling marijuana exhibited a willingness to import and distribute marijuana, the same offenses charged in the indictment. *See United States v. Hicks*, 798 F.2d 446, 451 (11th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987). Since the extrinsic act evidence was relevant to the issue of intent, the first tier of the *Beechum* analysis was satisfied.

Dorsey urges, however, that the district court abused its discretion in not requiring the government to introduce evidence that the probative value of the extrinsic offense

---

**3.** Dorsey also argues that Bergman's testimony of his involvement in past drug smuggling ventures should have been excluded because there was no proof that he committed the offense. While it is true that the government must first prove the defendant's culpability in seeking admissibility of evidence under Rule 404(b), *United ed States v. Dothard*, 666 F.2d 498, 502 (11th Cir.1982), this issue normally presents a jury

question "unless the judge becomes convinced that the jury could not reasonably find that the defendant committed the alleged prior offense." *United States v. Byers*, 600 F.2d 1130, 1132 (5th Cir.1979). We conclude that the question of Dorsey's participation in the drug activity described by Bergman was properly submitted to the jury.

evidence outweighed its prejudicial effect by showing a prosecutorial need for the testimony.

 It is not necessary that the district court make an on-the-record determination that the second requirement of the *Beechum* test has been met. *United States v. Braithwaite*, 709 F.2d 1450, 1455–56 (11th Cir.1983). Whether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense. Factors to be considered include the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses and whether it appeared at the commencement of trial that the defendant would contest the issue of intent. *United States v. Mitchell*, 666 F.2d 1385, 1390 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982). Under a common sense view of these factors, *United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986), it cannot be said that the district court abused its discretion in admitting the extrinsic act evidence. From the trial's inception, the question of intent dominated Dorsey's case. The extrinsic offenses were similar in nature and time to the crimes charged since both offenses implicated Dorsey in large scale drug activity and both occurred within months of the indictment period. *See United States v. Terebecki*, 692 F.2d 1345 (11th Cir.1982) (fifteen-month interval between charged offense and extrinsic act did not render evidence too remote). Moreover, the government's proof of intent at trial was not so overwhelming as to render the extrinsic offense evidence merely cumulative. Under these circumstances, the district court did not abuse its discretion.

C. Prosecutorial Comments.

The final assignment of error concerns a statement by the prosecutor referring to Dorsey during closing arguments. In summing up the evidence against the defendant, the prosecutor commented:

You will recall that Mr. Bergman testified, ladies and gentlemen, that—on cross examination, I recall—that the reason that he was having contact with Mr. Dorsey during the latter part of 1981 was because Mr. Dorsey was bringing marijuana from Jamaica and that he was having contact with him.

And I ask you, ladies and gentlemen, to take the testimony of Mr. Dorsey and combine it with the testimony of Mr. Alford [arresting agent on Dorsey's subsequent drug conviction] and return a verdict that speaks the truth as to Mr. Dorsey after determining what his intent was when he sat down and met with these people in Savannah at the Boar's Head.

Dorsey, who did not testify, insists that the prosecutor's reference to "the testimony of Mr. Dorsey" was an improper comment on the exercise of his fifth amendment right not to testify. The district court committed reversible error, he contends, by denying his motion for new trial on this ground.

 The test for determining whether a statement made in court is a comment on the failure of a defendant to testify is whether the statement was either "manifestly intended or was of such character that a jury would rationally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Countryman*, 758 F.2d 574, 578 (11th Cir. 1985), *quoting*, *United States v. Berkowitz*, 662 F.2d 1127, 1136 (5th Cir. Unit B 1981). In applying this standard, the court must examine the comment in context to evaluate the motive behind the statement and its impact on the jury. *United States v. Watkins*, 811 F.2d 1408, 1412 (11th Cir. 1987).

 The prosecutor's statement was obviously a slip of the tongue. He simply identified the defendant by accident when he meant to refer to the testimony of Bergman. The defense counsel's failure to object highlights the innocuous nature of the

**1062**

remark.[4] Clearly, the prosecutor had neither the intent nor the effect of referring to Dorsey's decision not to testify and hence no prejudice to the defendant resulted from the comment.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

4. The failure to object to the statement would render these remarks erroneous only if they are so grossly prejudicial that the harm cannot be removed by objections or instructions. *United States v. Griggs*, 735 F.2d 1318 (11th Cir.1984).

Since the challenged prosecutorial statement is clearly harmless under the usual standard of review, it is necessarily permissible under the more lenient criteria of plain error where there was a failure to object. *Id.*, at 1324.