[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 10, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-10509
Non-Argument Calendar
_____

D. C. Docket No. 05-14051-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMIRO CORTES-SANCHEZ,
a.k.a. El Indio,
JOSE HERNANDEZ,
a.k.a. Santiago Garcia-Hernandez,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(January 10, 2008)**

Before CARNES, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Ramiro Cortes-Sanchez and Jose Hernandez appeal their convictions and sentences of 188 months and 262 months of imprisonment, respectively, for conspiracy to import and possess five kilograms or more of cocaine. See 21 U.S.C. §§ 963, 846. Cortes-Sanchez and Hernandez argue that the district court erred when it admitted evidence of their prior drug importation, under Federal Rule of Evidence 404(b), and found the drug quantity for sentencing based upon this evidence. We affirm.

## I. BACKGROUND

On July 1, 2005, U.S. Immigration and Customs Enforcement inspectors in Laredo, Texas, stopped a truck driven by Missahel Palacios-Molina that attempted to enter the United States from Mexico. Federal agents interviewed Palacios, who admitted that he had been hired to drive to Mexico, where the truck would be loaded with cocaine, and then Palacios would drive to Florida where he would call Cortes-Sanchez and Hernandez so that they could retrieve the truck. Palacios agreed to make a controlled delivery of the truck and cocaine under federal supervision.

When Palacios arrived at the truck stop designated for the delivery, he met with Hernandez and Cortes-Sanchez. Palacios and Cortes-Sanchez discussed

2

Palacios's payment and the amount of cocaine inside the truck. Agents had installed a "kill switch" in the truck, so that the truck would not start when Hernandez and Cortes-Sanchez tried to leave. Agents then arrested all three men.

Hernandez made a post-arrest statement that he had been hired by a drug dealer twice before to drive the same truck from a restaurant in a town in Florida to a gas station and that he had been hired a few days before the arrest to drive the truck from Ft. Pierce, Florida, to Okeechobee, Florida. Hernandez was paid $500 each time. He knew that there was cocaine in the truck on the last two trips.

At trial, Palacios testified that he was hired by Cortes-Sanchez twice before to drive a truck loaded with drugs from Mexico to Florida, first in January 2005 and then in March 2005. Palacios testified that both of the earlier trips involved the same players, Hernandez and Cortes-Sanchez, in the same roles. Palacios testified that the group imported ten kilograms of cocaine during the first trip and eleven kilograms of cocaine during the second trip. The parties stipulated that the amount of cocaine involved in the third trip was 9.704 kilograms. Cortes-Sanchez and Hernandez objected to the admission of Palacios's testimony both before and during his testimony.

The district court instructed the jury that it had "heard evidence that at a time other than the time charged in the indictment in this case, the Defendant[s]

3

committed acts similar to the acts charged here." The district court further instructed the jury that it "may consider such evidence, not to prove that the Defendant[s] did the acts charged in this case, but only to prove the Defendant[s'] state[s] of mind; that is, that the Defendant[s] acted as charged in this case with the necessary intent and not through accident or mistake."

The jury found both Cortes-Sanchez and Hernandez guilty of conspiracy to both import and possess cocaine. See 21 U.S.C. §§ 963, 846. The jury returned a special verdict that found the amount of cocaine involved in both the importation and possession counts was five kilograms or more as to both defendants. At sentencing, the district court found that the past offenses were conduct relevant to the charged offenses, so the drug quantity for purposes of sentencing both defendants was 29.704 kilograms, which included an average quantity of ten kilograms for each past offense.

## II. STANDARDS OF REVIEW

We review the decision by the district court to admit evidence under Rule 404(b) for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005), cert. denied, 547 U.S. 1085 (2006). "We review the sufficiency of the evidence de novo to determine whether a reasonable jury could have concluded that the evidence established the defendants' guilt beyond a reasonable doubt," and

4

"we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in the government's favor." United States v. Brazel, 102 F.3d 1120, 1131 (11th Cir. 1997) (citing United States v. Lyons, 53 F.3d 1198, 1200 (11th Cir. 1995)). We review de novo the interpretation and application of the Guidelines, and we review underlying factual findings, including the drug quantity, for clear error. United States v. McVay, 447 F.3d 1348, 1352–53 (11th Cir. 2006).

## III. DISCUSSION

Cortes-Sanchez and Hernandez make two arguments on appeal. First, they argue that the district court abused its discretion when it admitted evidence regarding their past drug offenses under Rule 404(b). Second, they argue that the district court erred when it found the drug quantity for sentencing based on this Rule 404(b) evidence. We address each argument in turn.

### A. The District Court Did Not Abuse Its Discretion When It Admitted Evidence Regarding the Defendants' Past Drug Offenses under Rule 404(b).

Rule 404(b) evidence "may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). A three part test governs the admission of 404(b) evidence:

> For evidence of other crimes or acts to be admissible under Rule 404(b), (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.

United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000)) (footnote omitted). The record supports the admission of the evidence of earlier trips to transport cocaine under each part of this test.

First, the evidence was relevant to the intent of Cortes-Sanchez and Hernandez to commit the charged offense. When a criminal defendant pleads not guilty, he "makes intent a material issue" and "imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." Id. at 1345 (quoting United States v. Zapata, 138 F.3d 1355, 1358 (11th Cir. 1998)). Extrinsic evidence of past crimes is relevant to show intent, and satisfies the first part of the Rule 404(b) test, if "the state of mind required for the charged and extrinsic offenses is the same." Id. (citing United States v. Dorsey, 819 F.2d 1055, 1059 (11th Cir. 1987); United States v. Dickerson, 248 F.3d 1036, 1047 (11th Cir. 2001)). It is undisputed that both Cortes-Sanchez and Hernandez

6

pleaded not guilty to the charged offenses, which placed their intent at issue, and the state of mind required for the charged offenses is identical to the extrinsic offenses.

Second, Palacios's testimony provided a sufficient basis for the jury to find that Cortes-Sanchez and Hernandez committed the extrinsic offenses by a preponderance of the evidence. "[T]he uncorroborated word of an accomplice . . . provides a sufficient basis for concluding that the defendant committed extrinsic acts admissible under Rule 404(b)." Dickerson, 248 F.3d at 1047 (quoting United States v. Bowe, 221 F.3d 1183, 1192 (11th Cir. 2000)) (internal quotation marks omitted). Even if it were uncorroborated, Palacios's testimony was sufficient to prove the involvement of Cortes-Sanchez and Hernandez in the past offenses, but Palacios's testimony was corroborated by Hernandez's post-arrest statement and Palacios's recorded conversations with Cortes-Sanchez about money that Cortes-Sanchez owed Palacios for past importation.

Third, the evidence was more probative than prejudicial because the past and charged offenses were substantially similar. "'[W]hether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense.'" Edouard, 485 F.3d at 1345 (quoting Dorsey, 819 F.2d at 1061) (internal quotation marks omitted) (alteration in

7

original).  Relevant circumstances include the "overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." United States v. Jernigan, 341 F.3d 1273, 1282 (11th Cir. 2003) (United Stats v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997)) (internal quotation marks omitted).  We have stated that "a not guilty plea in a drug conspiracy case . . . opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of a defendant's intent." Calderon, 127 F.3d at 1332 (citing United States v. Diaz-Lizaraza, 981 F.2d 1216, 1225 (11th Cir. 1993)), modified on other grounds by United States v. Toler, 144 F.3d 1423 (11th Cir. 1998).  The charged offenses involved the same people performing the same conduct as the past crimes, and all of the incidents occurred within a six-month time period.  The district court also gave a limiting instruction to the jury regarding the Rule 404(b) evidence that reduced the risk of undue prejudice to the defendants.  See Edouard, 485 F.3d at 1346 (citing Diaz-Lizaraza, 981 F.2d at 1225).  The district court did not abuse its discretion when it admitted the evidence of prior drug offenses to prove intent.

To the extent the defendants also argue that the evidence regarding the charged offenses was insufficient for the jury to convict them, we disagree. Palacios participated in a controlled delivery of a truck containing about ten

kilograms of cocaine, Palacios talked to Cortes-Sanchez and Hernandez to arrange the delivery, Cortes-Sanchez and Hernandez arrived to take the truck with the cocaine, and Cortes-Sanchez discussed how he would pay Palacios. Hernandez gave a post-arrest statement admitting his involvement in two previous shipments. Based on the evidence regarding the charged offenses and the 404(b) evidence regarding intent, the jury could have found beyond a reasonable doubt that Cortes-Sanchez and Hernandez knowingly participated in the charged conspiracies.

### B. The District Court Did Not Err When It Found the Drug Quantity for Sentencing Based on the Rule 404(b) Evidence.

In drug offenses where the base offense level is determined largely by the drug quantity, such as the offenses in this appeal, the district court must consider all relevant conduct "that w[as] part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §§ 1B1.3(a)(2), 3D1.2(d). We have held that evidence of relevant conduct may include extrinsic evidence that the district court admitted under Rule 404(b). United States v. Bennett, 368 F.3d 1343, 1356–57 (11th Cir. 2004), vacated on other grounds, 543 U.S. 1110, 125 S. Ct. 1044 (2005). To determine what conduct is relevant for the purposes of section 1B1.3, we evaluate the "similarity, regularity, and temporal proximity" between the convicted offense and extrinsic offenses. United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994). We also "consider 'whether there are distinctive

9

similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind.'"  Bennett, 368 F.3d at 1356 (quoting Maxwell, 34 F.3d at 1011).  In Bennett, we held that the drug quantities involved in the extrinsic conduct "were properly considered to be relevant conduct for the purpose of calculating [the defendant's] base offense level," and we found significant that all of the offenses involved the same drug and the defendant's role in each offense was the same. Id. at 1356–57.

We conclude that the extrinsic offenses were sufficiently similar to the charged offenses to be relevant conduct under section 1B1.3 of the Guidelines. The record established that the charged and prior offenses were only a few months apart, involved the same drug, and involved Cortes-Sanchez and Hernandez performing the same roles in each of the offenses.  The charged and prior offenses contained "distinctive similarities" such that they were "part of a single course of conduct." Id.  There was sufficient evidence to determine by a preponderance of the evidence that the drug quantity attributable to each defendant included the amounts from the past offenses. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).  The district court properly considered the drug quantities involved in the past offenses when it calculated Cortes-Sanchez's and Hernandez's

10

base offense levels, and the finding of the district court regarding the drug quantity attributable to each defendant was not clearly erroneous.  See Bennett, 368 F.3d at 1357; U.S.S.G. § 1B1.3(a)(2).

In his reply brief, Hernandez argues that, if the government's contention that the evidence admitted under Rule 404(b) was intrinsic, instead of extrinsic, is correct, then there was an amendment or variance to the indictment, which was reversible error.  Cortes-Sanchez adopted Hernandez's reply brief with respect to this issue.  Neither Hernandez nor Cortes-Sanchez raised this issue in their initial appellate briefs.  They abandoned this argument.  United States v. Magluta, 418 F.3d 1166, 1185 (11th Cir. 2005).

## IV.  CONCLUSION

The convictions and sentences of Cortes-Sanchez and Hernandez are **AFFIRMED.**