**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-12595

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CHRISTOPHER SWITLYK,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court

for the Middle District of Florida

D.C. Docket No. 8:24-cr-00234-VMC-TGW-1

————————————————

Before JORDAN, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Christopher Switlyk appeals his conviction for two counts of removal of property to prevent seizure, in violation of 18 U.S.C. 2232(a). Switlyk argues that the district court abused its discretion

by not admitting evidence of an alleged threat made by an Assistant U.S. Attorney that occurred in February 2023. He also argues that the district court abused its discretion by not admitting as hearsay Switlyk's father's testimony about an alleged promise made by an Assistant U.S. Attorney that occurred on November 16, 2022. Lastly, he argues that the district court abused its discretion by admitting evidence pursuant to Federal Rule of Evidence 404(b) that Switlyk previously buried gold coins and silver bars because the evidence was irrelevant, and the prejudicial effect of the evidence outweighed its probative value. For the reasons discussed below, we affirm.

## I.    BACKGROUND

In May 2024, a federal grand jury returned an indictment charging Switlyk with four counts of knowingly disposing of and transferring property for the purpose of preventing and impairing the government's lawful authority to take the property into its custody and control, in violation of 18 U.S.C. § 2232(a). Switlyk pleaded not guilty and proceeded to trial. Counts I and II related to the disposal and transfer of two parcels of real property located in Daytona Beach, Florida that occurred on or about November 16, 2022. Count III related to the disposal and transfer of a Tesla on or about November 16, 2022. Count IV related to the disposal and transfer of real property located in Tampa, Florida. Switlyk pleaded not guilty to all counts.

As background, in 2010 Switlyk was charged with various drug-conspiracy and money-laundering offenses stemming from

his operation of a pharmacy and the distribution of controlled substances not for a legitimate medical purpose and not in the usual course of professional practice (the "2010 case"). Switlyk pleaded guilty in 2012 and was sentenced to a term of 108 months' imprisonment, which was later reduced to 87 months.

As part of his sentence, a forfeiture money judgment for $10,700,592 and a final order of forfeiture were entered against Switlyk. In his plea agreement, Switlyk further agreed "to make a full and complete disclosure of all assets over which [he] exercises control and those which are held or controlled by a nominee."

Also in 2012, prior to the entry of judgment in the 2010 case, Switlyk buried in a friend's backyard 270 bars of silver worth $80,000 and 150 gold coins worth $250,000. The government later seized some of the gold coins as substitute assets toward the forfeiture money judgment. Ultimately, the government was able to obtain approximately $6.5 million toward the forfeiture money judgment, but a balance of more than $4 million remained.

After his release from prison in 2017, Switlyk purchased two real properties in Daytona Beach, Florida, of which he was the sole titled owner. He also purchased a 2022 Tesla Model X, which was registered in his name. And he had title to a third property located in Tampa, Florida.

In 2022, the United States Marshals Service ("USMS") learned of assets that Switlyk possessed that could be forfeited as substitute assets for the money judgment from his 2010 case. On

November 13, 2022, the government moved ex parte in the 2010 case for a preliminary order of forfeiture for substitute assets, which the district court granted that day.  The order forfeited, among other things, the three real properties, the Tesla, and the contents of several financial accounts owned by Switlyk.

After learning that his accounts were frozen on November 15, 2022, the government stated that Switlyk called the U.S. Marshals Service and spoke to an investigator the following day, November 16, 2022, who told him that she would send him paperwork with the legal hold order later that day.  Following the phone call, Switlyk transferred the two properties located in Daytona Beach and the Tesla to his father.  With the Tesla, Switlyk had backdated the date of sale to his father, under penalty of perjury, to November 11, 2022—a few days before the preliminary order of forfeiture.  The same afternoon, but after he transferred the properties, the USMS emailed Switlyk the court's forfeiture order that listed the properties.  The next day, Switlyk transferred the third property, located in Tampa, to his father.

Switlyk and his father contested the forfeiture in the 2010 case.  On February 15, 2023, their civil counsel sent a settlement offer via email to an Assistant United States Attorney ("AUSA") who was handling the forfeiture matter.  In response, the AUSA wrote, "It seems transferring the real properties and the Tesla (from son to father) after learning of our forfeiture efforts would constitute obstruction of justice, in violation of 18 U.S.C. §1503 and 18 U.S.C. §2232."  The email quoted sections 1503 and 2232 and

continued: "It strikes me that by (1) executing and recording the quitclaim deeds and (2) transferring title to the Tesla, the Switlyks were both corruptly endeavoring to obstruct, or impede, the due administration of justice and impeding a criminal forfeiture. Before responding to your settlement offer, it would be helpful to know if you agree with my conclusion."

The government deposed Switlyk and his father. The parties ultimately reached a settlement agreement in which the Switlyks agreed to relinquish their claims to the properties subject to forfeiture and to consent to the forfeiture of the properties. In exchange, the government agreed to forgo further collection efforts against Switlyk as to the money judgment. The court then entered its final forfeiture order.

Returning to the current case, the federal grand jury indictment was returned in May 2024. Switlyk moved to dismiss his indictment based on purported prosecutorial misconduct. He relied on the forfeiture AUSA's February 2023 email, which Switlyk characterized as a threat of criminal prosecution. The district court denied the motion as untimely and, alternatively, without merit. The court found, among other things, that the AUSA "did not threaten either Switlyk or [his father] with criminal prosecution" and that, although the AUSA "expressed an opinion that Switlyk's and [his father's] transfers were unlawful, the email does not include a threat to prosecute either man criminally."

Switlyk next moved to exclude references at trial to the convictions in his 2010 case and the details of the underlying criminal

activity, and to admit a redacted version of the plea agreement. The United States, meanwhile, moved to admit the indictment and judgment in the 2010 case as to only the money-laundering convictions and relevant forfeiture provisions, as well as evidence that Switlyk had previously buried gold and silver in a friend's backyard.

As for Switlyk's burying of the gold and silver, the government explained that, despite his obligations under the plea agreement in the 2010 case, Switlyk had denied having other assets subject to forfeiture. Thus, the evidence was relevant under Federal Rule of Evidence 404(b) to prove his state of mind, intent, and motive to commit the instant offenses.

In an order resolving both motions, the district court excluded references to Switlyk's money-laundering convictions and the details of the underlying criminal activity but granted the United States' motion as to the admissibility of his burying of the gold and silver. In addressing Rule 404(b), the court found that there "is proof that Switlyk purchased and hid valuable gold coins and silver bars during his previous criminal case," that "Switlyk's concealment of other valuable assets so the government would not find them is highly probative of his intent and motive in this case," and that Switlyk "will not be unduly prejudiced by introduction of the evidence relating to the hidden gold coins and silver bars." As to the evidence's probative value, the court explained:

> Here, the major issue at trial will be Switlyk's state of mind or intent. That is, whether he transferred the

properties to his father in order to prevent government seizure (as the government maintains) or because his father had a financial interest in the properties (as Switlyk maintains). Thus, evidence of Switlyk's previous attempts to hide valuable assets from government seizure under the same forfeiture judgment is probative of Switlyk's intent and motive in transferring multiple properties to his father . . . . This evidence also rebuts Switlyk's alternate explanation for why he transferred the properties to his father.

As for the duration of time between the prior act and the instant offenses, the court found that the acts were not "too remote in time" to lack probative value, observing that the prior concealment was "allegedly conducted to avoid forfeiture of these assets to the government under the same forfeiture judgment at issue in this case." (emphasis in original). The court further agreed to provide an appropriate instruction to the jury to limit any unfair prejudice.

The government also moved to exclude the eventual settlement agreement and offers to compromise the forfeiture matter, relying on Federal Rules of Evidence 401, 403, and 408 and *United States v. Arias*, 431 F.3d 1327 (11th Cir. 2005). In the same motion, the government moved to exclude references to Switlyk's efforts to seek advice of counsel around the time of the property transfers. On the first day of trial, the district court granted the motion in part and denied it in part. The court permitted Switlyk to introduce

testimony regarding some aspects of the settlement agreement and his efforts to contact counsel.

Switlyk's trial lasted three days.  USMS personnel testified regarding the case's background, including prior forfeiture efforts, the preliminary order of forfeiture, and Switlyk's subsequent transfers.  The forfeiture settlement offer came up during cross-examination of the USMS investigator.  The following exchange took place outside the presence of the jury:

> [**Defense counsel**]: . . . I do intend to ask whether, in response to that settlement offer, [the forfeiture AUSA] threatened criminal charges against the Switlyks . . . .
>
> . . .
>
> [**Prosecutor**]: Your Honor, that's getting into hearsay as to what [the AUSA] said in an email—
>
>  . . .
>
> [**Defense counsel**]: . . . It's not for the truth, your Honor.  It's to show the effect on the Switlyks that they gave back all these properties under threat of criminal prosecution, which then, of course, happened anyway.
>
> **The Court**: . . . [Y]ou can ask [the AUSA] that. [The AUSA] will be here. You're calling him as a witness. [**Prosecutor**]: No. No, your Honor, not anymore. . .

> . I figured he might be needed for, like, a rebuttal case, but I was not planning on calling him in my case-in-chief.

When the parties revisited the purported threat evidence, the district court stated its ruling on the matter:

> **The Court**: . . . It's one thing to tell your story. It's quite another thing when the timeline just doesn't make any sense. It just doesn't make any sense here. Let's go back. Transfer, November 2022. Settlement agreement, February 2023. What did [the AUSA] say or didn't say is kind of irrelevant, honestly. I mean, it really is. Because the crime is November 2022, the transfer. Who cares what happened afterwards?
>
> . . .
>
> **The Court**: … [I]t's going to confuse—it's confusing the jury. I mean, I had to sit here and take notes on the dates and everything so that I would understand it and, you know, I've done this stuff for a long time. So I mean, the operative date here, would you agree, Mr. Roberts, is November 2022, right, when the stuff took place?
>
> **Prosecutor**: Yes, your Honor.
>
> . . .

> **The Court**: . . . So what I said earlier was the settlement agreement could come in to prevent prejudice to the defendant that might result from the jury thinking that he got to keep the property, so he has the fancy car, whatever it was, the Tesla or something like that. Was it the Tesla?
>
> **Defense counsel**: Yes, your Honor.
>
> **The Court**: I know it was a fancy car. Okay. He got to keep the Tesla and he got to keep the properties. And so now you're trying to use the admission of settlement as an argument that he's being treated unfairly by the government. I mean, you've really—you know, it's like give him an inch, they'll take a mile. I mean, that's what you've done, Mr. Rankin. I mean, you've taken ten miles. I said this and you're like way out there. No. So that's my ruling on that matter.

The court thus excluded the purported threat.

As for Switlyk's burying of the gold and silver, a former investigator involved in forfeiture efforts related to the 2010 case testified regarding the matter. The district court overruled Switlyk's renewed objection to the evidence under Federal Rules of Evidence 401 and 403. Consistently with its prior order, the court then instructed the jury as follows:

> You have just heard evidence of acts allegedly done by the defendant that may be similar to those charged

in the indictment, but were committed on other occasions. You must not consider this evidence to decide if the defendant engaged in the activity alleged in the indictment, but you may consider this evidence to decide whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment, the defendant had a motive or an opportunity to commit the acts charged in the indictment, the defendant acted according to a plan or in preparation to commit a crime, or the defendant committed the acts charged in the indictment by accident or mistake.

After the government rested, Switlyk moved for a judgment of acquittal. The district court denied the motion.

While Switlyk elected not to testify, he called his father as a witness. The father maintained that he had loaned his son money to purchase the real properties and Tesla pursuant to unrecorded promissory notes and that he had directed the transfer of the titles based on his son's default on the loans. He also testified that he had expressed concerns to his son about his son's transferring the Tampa property after receipt of the preliminary order of forfeiture, which expressly identified the property as subject to forfeiture. He testified that, during a conversation with "the attorney," there was a comment made "point-blank, if your parents can show documentation that they paid for these properties, I will take them off the list." The government objected and moved to strike the testimony

as hearsay. The district court sustained the government's objection.

The jury found Switlyk guilty on Counts III and IV, which pertained to the transfers of a 2022 Tesla Model X and the property located in Tampa and not guilty on the remaining counts. The district court sentenced him to serve 18 months' imprisonment, which was at the bottom of the applicable sentencing guidelines range.

## II.    STANDARD OF REVIEW

"All evidentiary rulings are reviewed for an abuse of discretion." *United States v. Akwuba*, 7 F.4th 1299, 1313 (11th Cir. 2021). "The abuse of discretion standard has been described as allowing a range of choice for the district court, so long as that choice does not constitute a clear error of judgment," and we defer to the district court's decisions to a considerable extent. *Id.* (quotation marks omitted). Even if the district court's ruling violated the Federal Rules of Evidence, we will not reverse if the error was harmless. *United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026). An error is harmless unless "there is a reasonable likelihood that [it] affected the defendant's substantial rights." *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990). We need not reverse a conviction if the evidentiary error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992).

## III.    ANALYSIS

First, Switlyk argues that the district court erred by excluding as hearsay evidence that the AUSA threatened Switlyk with prosecution if they did not settle the case during a February 2023 settlement agreement.  He frames the district court's ruling as based on the grounds of hearsay, but the record shows that the district court concluded that this evidence was irrelevant and likely to confuse the jury.  The district court's decision to not admit evidence of an alleged threat did not constitute a clear error of judgment.

Only relevant evidence is admissible at trial.  *See* Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Although a defendant has a right to present crucial, relevant evidence to his defense, he does not have a right to introduce evidence that does not bear a logical relationship to an element of the offense or an affirmative defense, whether direct or indirect."  *United States v. Watkins*, 42 F.4th 1278, 1288 (11th Cir. 2022) (quotation marks omitted).

Switlyk argues that the threat evidence should have been admitted because it was not offered to prove that the threat was

backed by fact but rather was offered to show the effect the statement had on Switlyk, namely, intimidating him into surrendering the property. But because the evidence related to a statement made in February 2023, it is not relevant to Switlyk's intent at the time of the November 2022 property transfers.

It was thus within the district court's considerable discretion to conclude that a statement that occurred in February 2023 was not probative of Switlyk's intent at the time he transferred the assets in November 2022, which was the primary fact at issue in this case. *See Watkins*, 42 F.4th at 1288; Fed. R. Evid. 401. Additionally, the district court acted within its discretion under Rule 403 in ruling that introducing this evidence would confuse the jury as to the timeline of the relevant offense conduct. *See Akwuba*, 7 F.4th at 1313; Fed. R. Evid. 403. Because the district court's ruling was based on relevancy and Rule 403, the issue of whether the statement was hearsay need not be broached. We thus affirm the district court's exclusion of evidence that the AUSA allegedly threatened Switlyk with prosecution.

Next, Switlyk argues that the district court erred by excluding as hearsay the following statement from the AUSA: "if your parents can show documentation that they paid for these properties, I will take them off the list." He argues that this statement should not have been excluded because it was offered to show the effect the statement had on Switlyk and his father, namely, that the statement erroneously induced them to believe that the forfeiture would be nullified. Denying the jury insight into his statement of

mind at the time of the property transfer, Switlyk says, entitles him to a new trial. We conclude that the district court did not abuse its discretion by not admitting the alleged promise.

Hearsay is a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is generally not admissible. Fed. R. Evid. 802. "Generally, an out-of-court statement admitted to show its effect on the hearer is not hearsay." *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015).

A statement of the declarant's then-existing state of mind is not excluded under the rule against hearsay. Fed. R. Evid. 803(3). This exception to the rule against hearsay refers to the state of mind of the declarant, not the state of mind of the listener. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1216 (11th Cir. 2010). Even if a district court erroneously excluded a statement on the grounds that it was hearsay, we can affirm a district court's evidentiary ruling if it was correct on any ground, such as relevancy or the grounds as stated in Federal Rule of Evidence 403. *United States v. Elysee*, 993 F.3d 1309, 1338-39 (11th Cir. 2021).

When an out-of-court statement is offered for a non-hearsay purpose, "the primary risk is that the jury will take the statement[] not for the permissible use, but for the truth of the matter asserted," and this danger is greatest when the statement bears directly on the guilt or innocence of the defendant. *Id.* at 1342. We have also noted that out-of-court statements offered to illuminate

the state of mind of an individual other than the defendant were properly excluded as irrelevant. *See United States v. Jeri*, 869 F.3d 1247, 1261 (11th Cir. 2017) (noting that, to the extent transcripts between the defendant and Lopez were offered to illuminate the state of mind of either the defendant or Lopez, they were properly excluded because the transcripts revealed Lopez's state of mind, which was irrelevant because Lopez was not on trial).

Here, the district court did not err in not admitting a statement about an alleged promise made by the AUSA because, even if the statement was admissible as not hearsay, the statement was not relevant and its probative value was outweighed by the danger of misleading the jury. As a threshold matter, if the statement was offered for the truth of the matter asserted, it would be inadmissible as hearsay because it was not being offered to show the AUSA's state of mind, but rather was being offered to show Switlyk's father's, and by extension defendant Switlyk's, state of mind upon hearing the statement. *See De La Cruz Suarez*, 601 F.3d at 1216. If the statement was being offered not for the truth that the properties would be taken off the list, but rather for the effect that this statement had on the Switlyks, as argued by Switlyk, then the statement would not be considered hearsay. *See Rivera*, 780 F.3d at 1092.

However, we need not attempt to parse this nuance of trial because the district court's ruling can still be affirmed on the grounds that the statement was not relevant or would mislead the jury. *See Elysee*, 993 F.3d at 1338–39, 1342. The statement was not relevant regarding the transfer of the Tesla in Count III because the

Tesla was transferred before the phone call where the statement was allegedly made, and therefore it is not probative of Switlyk's intent at the time of that transfer and can be affirmed on that ground.  Fed. R. Evid. 401.

Regarding the transfer of the Tampa property in Count IV, the statement is potentially relevant to Switlyk's intent, but ultimately, introducing the statement into evidence would likely have misled the jury.  Switlyk stated during the trial that this evidence was being offered to show his father's reaction to the AUSA's out of court statement, which was irrelevant given that the father was not the defendant in this case. *See Jeri*, 869 F.3d at 1261.  However, Switlyk's father did testify that Switlyk was with him during the November 16, 2022, phone call where the AUSA made the alleged statement, so it is plausible that this statement could have had the same effect on Switlyk as it did on the father, making the facts here differ from those in *Jeri*.  *See Jeri*, 869 F.3d at 1261.

Additionally, the statement that the properties would be taken off the list if Switlyk could prove that they belonged to his father is probative of Switlyk's intent at the time of the property transfer, which occurred the day after the phone call where the alleged statement was made.  But despite the potential probative value of the statement, the risk of misleading the jury would likely have been high because the jury may have taken the statements for the truth that the properties would actually be taken off the forfeiture order, rather than for speculative impact the statement may have had on Switlyk's state of mind.  *See Elysee*, 993 F.3d at 1342.

Regardless, even if the district court did err, any error was harmless because there was sufficient other evidence in the record that supported the verdict. *See Fortenberry*, 971 F.2d at 722. For example, as to Count III, there was evidence that on November 16, 2022, Switlyk backdated the sale for the Tesla under penalty of perjury to November 11, 2022. And as to Count IV, Switlyk's father testified that the Tampa property was transferred on November 17, 2022, rather than November 16, 2022, because the transfer had to be done in a different county. We thus affirm the district court's exclusion of the AUSA's alleged promise.

Finally, Switlyk argues that the district court erred by admitting testimony regarding his act of burying gold coins and silver bars in a friend's backyard in 2012 because this evidence was non-relevant, prejudicial propensity evidence. He argues that this evidence should have been excluded because it was not relevant to any issue other than his character and that the probative value of this evidence was substantially outweighed by its undue prejudicial effect.

Rule 404(b) of the Federal Rules of Evidence prohibits the introduction of evidence of a "crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It does, however, allow such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

We have held that Rule 404(b) is a "rule of inclusion" that generally favors admission of such evidence if it is core to the prosecution's case. *United States v. Karpordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (quotation marks omitted). We apply a three-part test to determine the admissibility of rule 404(b) evidence: (1) the evidence must be relevant to an issue other than the defendant's character; (2) sufficient evidence must be presented for a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must satisfy Federal Rule of Evidence 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Factors to be considered include the overall similarity of the extrinsic and charged offenses, the time separating the extrinsic and charged offenses, the government's need for the evidence, and "whether it appeared at the commencement of trial that the defendant would contest the issue" for which the evidence is to be used. *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). We have "refrained from adopting a bright-line rule with respect to temporal proximity." *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005); *see also United States v. Lampley*, 68 F.3d

1296, 1300 (11th Cir. 1995) (upholding the admission of Rule 404(b) evidence where the other acts occurred 15 years earlier than the charged offense).

A court's limiting instruction can reduce the risk of undue prejudice. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) (noting that, where the district court issued a limiting instruction both at the presentation of the evidence and in its final charge to the jury, "any unfair prejudice possibly caused by its introduction was mitigated").

We conclude that the district court did not abuse its discretion in admitting evidence of Switlyk burying gold coins and silver bars because the evidence was probative of Switlyk's intent, which was the primary issue in this case, and any undue prejudice was mitigated by the court's two limiting jury instructions. By pleading not guilty, Switlyk made his intent a material issue, and his intent while transferring the properties was the primary issue in this case. *See Zapata*, 139 F.3d at 1358; *Karpordelis*, 569 F.3d at 1313. It was also not in dispute that Switlyk buried the gold coins and silver bars. *See Edouard*, 485 F.3d at 1344.

Although the conduct occurred ten years earlier, the evidence of Switlyk burying the gold coins and silver bars was not so remote, especially because the evidence involved similar conduct and related to the same forfeiture proceedings. *See Dorsey*, 819 F.2d at 1061; *Lampley*, 68 F.3d at 1300. Switlyk argues that he buried the coins and bars before a final forfeiture order was in place, but it is

clear from the record that this act occurred after he had been charged in the 2010 criminal case and while he was undergoing forfeiture proceedings.  Further, any unfair prejudice was mitigated by the district court's multiple limiting instructions.  *See Ramirez*, 426 F.3d at 1354; *Diaz-Lizaraza*, at 1225.

As stated above, even if the district court did err, any error was harmless because there was sufficient other evidence in the record that supported the verdict.  *See Fortenberry*, 971 F.2d at 722.

## IV.    CONCLUSION

For the reasons stated, we affirm Switlyk's conviction on all grounds.

**AFFIRMED.**